UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

)
DAVID LITTLEFIELD, MICHELLE      )
LITTLEFIELD, TRACY ACORD, DEBORAH )
CANARY, FRANCIS CANARY, JR.,     )
VERONICA CASEY, PATRICIA COLBERT, )
VIVIAN COURCY, WILL COURCY, DONNA )
DEFARIA, ANTONIO DEFARIA, KIM    )
DORSEY, KELLY DORSEY, FRANCIS    )
LAGACE, JILL LAGACE, DAVID LEWRY, )
KATHLEEN LEWRY, MICHELE LEWRY,   )
RICHARD LEWRY, ROBERT LINCOLN,   )
CHRISTINA McMAHON, CAROL MURPHY,  )
DOROTHY PEIRCE, DAVID PURDY, and )
LOUISE SILVIA,                   )
                                 )
                Plaintiffs,      )
                                 )
                                 )        CIVIL ACTION
           v.                    )        NO. 16-10184-WGY
                                 )
UNITED STATES DEPARTMENT OF      )
THE INTERIOR; SALLY JEWELL,      )
in her official capacity; BUREAU )
OF INDIAN AFFAIRS; LAWRENCE      )
ROBERTS, in his official capacity, )
and UNITED STATES OF AMERICA,    )
                                 )
                Defendants.      )
_____  )

**MEMORANDUM & ORDER**

YOUNG, D.J.                                    July 28, 2016

## I.   INTRODUCTION

This case arises out of a decision of the Secretary of the

Department of the Interior (the "Secretary") to acquire land in

trust for the benefit of the Mashpee Wampanoag Tribe (the

"Mashpees") under Section 465 of the Indian Reorganization Act
("IRA"), 25 U.S.C. § 465.  The Plaintiffs are residents of
Taunton who claim they are injured by the acquisition and
planned development of the land at issue.  They have filed suit
against the Department of the Interior (the "Department"), the
Bureau of Indian Affairs (the "BIA"), Acting Assistant Secretary
of Indian Affairs Lawrence Roberts, and the United States
(together, the "government"), challenging the Secretary's
decision pursuant to Section 702 of the Administrative Procedure
Act ("APA"), 5 U.S.C. § 702.  The parties make cross-motions for
summary judgment on the Plaintiffs' first cause of action,
United States' Mot. Partial Summ. J., ECF No. 55; Pls.' Mot.
Summ. J. First Cause Action, ECF No. 58, which involves the
Mashpees' eligibility as beneficiaries under the IRA, and
correspondingly, the authority of the Secretary to take land
into trust for the Mashpees' benefit.

> **A.    Factual Background**[1]

---

[1] As the motions presently before the Court involve a narrow
question of statutory interpretation rather than a factual
dispute, the Court sketches only a brief outline of the relevant
facts, accepting as true the uncontested factual assertions set
forth in the Secretary's Record of Decision and the statements
of fact submitted in conjunction with the parties' summary
judgment motions, which are not the subject of dispute.  See
Stip. and Order Limiting Scope Rule 65(a)(2) Trial Plaintiffs'
First Cause Action and Deferring Other Matters Pending
Disposition Same 3-4, ECF No. 50 (stating that the "Plaintiffs'
First Cause of Action challenges the [Department of the
Interior's] Record of Decision on the alleged grounds, inter

The Mashpees are a federally recognized tribe that obtained official acknowledgement from the BIA in 2007.[2]  Pls.' Local Rule 56.1 Separate Statement Facts Supp. Mot. Summ. J. First Cause Action ("Pls.' Statement Facts") 1, ECF No. 60; Compl., Ex. 1, R. Decision 4, ECF No. 1-1.[3]  Previously, the Mashpees had been subject to colonial and state governmental jurisdiction.  Pls.' Statement Facts ¶ 5.  Upon receiving federal acknowledgement, the Mashpees filed a "fee-to-trust" application with the BIA requesting that the Department acquire tracts of land for the Mashpees' use as a tribal reservation in Mashpee and Taunton,

---

alia, that it is inconsistent with the plain language of the Indian Reorganization Act of 1934 and the Supreme Court's decision in Carcieri v. Salazar, 555 U.S. 379 (2009)," and noting that such claim "is amenable to resolution even in the absence of the complete [administrative record] . . . on the basis of cross-motions for summary judgment[.]").

[2] For a historical overview of the politics involved in according federal recognition to various tribal entities, see generally Lorinda Riley, When a Tribal Entity Becomes a Nation: The Role of Politics in the Shifting Federal Recognition Regulations, 39 Am. Indian L. Rev. 451 (2015), http://digitalcommons.law.ou.edu/ailr/vol39/iss2/2.

[3] The Record of Decision issued by the Secretary of the Department of Indian Affairs appears on pages 50 through 189 of the Administrative Record.  See Notice Filing Certified Provisional Admin. R., ECF No. 51.  It was also attached as an exhibit to the Plaintiffs' complaint.  Compl., Ex. 1, ECF No. 1-1.  For purposes of clarity and simplicity, the Court cites the internal page numbers in the Record of Decision rather than the corresponding pagination in the Administrative Record.

Massachusetts.  R. Decision 4.[4]  Of concern to the Plaintiffs
here is the Taunton site, which "[t]he City of Taunton has
designated . . . for economic development purposes" and which
the Mashpees "would use . . . to meet [their] needs for economic
development."  Id.  Specifically, the Mashpees intend to
construct and operate "an approximately 400,000 sq. ft. gaming-
resort complex, water park, and 3 hotels" on the Taunton site.
Id. at 5.

On September 18, 2015, the Secretary issued a written
decision (the "Secretary's Decision" or "Record of Decision")
granting the Mashpees' fee-to-trust application.  See id.;
Admin. R. 000049 (memorandum from the Assistant Secretary of
Indian Affairs to the Regional Director, Eastern Region,
approving the Mashpees' request that the Department acquire land
in trust in Taunton "for gaming and other purposes" and declare
the acquired land the Mashpees' "initial reservation").  As
relevant to the matter at issue here, the Secretary specifically
found that "the Mashpee Tribe qualifies" -- i.e., is "eligible
to receive land into trust under the IRA" -- pursuant to the

---

[4] CD-ROMs containing the Administrative Record were filed
with the Court, along with notices and indexes, which are part
of the online docket.  See Notice Filing Certified Provisional
Admin. R., ECF No. 51; Notice Filing Certified Second
Provisional Admin. R., ECF No. 52.

second definition of "Indian" set forth in Section 479 of the
IRA.  R. Decision 112.

Both parties acknowledge that the land was subsequently
taken into trust on November 10, 2015.  Am. Compl. Decl. and
Inj. Relief ¶¶ 78, 82, ECF No. 12; United States' Mem. Law Supp.
Mot. Partial Dismissal 1, 9, ECF No. 17.  In the months since,
development of the Taunton site has been widely reported.  See,
e.g., Sean P. Murphy, Mashpee Tribe Speeds Up Timetable For
Taunton Casino Opening, Boston Globe (Mar. 14, 2016)
https://www.bostonglobe.com/metro/2016/03/14/mashpee-wampanoag-
tribe-prepares-unveil-schedule-for-massive-casino-
taunton/eHpal5nQfslYIyNgaSuFBJ/story.html; Philip Marcelo, Tribe
Breaks Ground on Massachusetts' Latest Casino Project, WBUR News
(Apr. 05, 2016) http://www.wbur.org/news/2016/04/05/tribe-
breaks-ground-casino.

   **B.  Procedural History**

The Plaintiffs filed suit challenging the Secretary's
Decision on February 4, 2016, Compl. Decl. and Inj. Relief, ECF
No. 1, and later amended their complaint to include additional
claims, Am. Compl. Decl. and Inj. Relief, ECF No. 12.  The
government timely moved to dismiss the Plaintiffs' fifth through
eighth causes of action.  United States' Mot. Partial Dismissal,
ECF No. 16; United States' Mem. Law Supp. Mot. Partial
Dismissal, ECF No. 17.

On May 27, 2016, the Plaintiffs filed their opposition to the government's partial motion to dismiss. Pls.' Mem. Law Opp'n Defs.' Mot. Partial Dismissal, ECF No. 22. The same day, the Plaintiffs moved for a preliminary injunction on the basis of their first cause of action, seeking that the land at issue be removed from trust, or, at minimum, that further development of the site be halted. Mot. Prelim. Inj. or Writ, ECF No. 25; Pls.' Mem. Law Supp. Mot. Prelim. Inj. or Writ ("Pls.' Mem. Supp. Prelim. Inj."), ECF No. 26. They also requested that the Court "advance the merits of" the first cause of action to permit the parties to then "exercise their right under 28 U.S.C. 1292(a) to immediately appeal this central, dispositive issue." Pls.' Mem. Supp. Prelim. Inj. 6. The government opposed the Plaintiffs' motion. United States' Mem. Opp'n Pls.' Mot. Prelim. Inj. or Writ ("Defs.' Mem. Opp'n Prelim. Inj."), ECF No. 38.

At a hearing on June 20, 2016, the Court combined further hearing on the injunction with trial on the merits, Fed. R. Civ. P. 65(a), and scheduled further oral argument for July 11, 2016, with additional briefing and production of the administrative record to occur in the interim. Elec. Clerk's Notes, ECF No. 40. On June 29, 2016, following a final pretrial conference, Elec. Clerk's Notes, ECF No. 49, the Court entered a joint stipulation limiting the scope of the upcoming hearing to the

merits of the Plaintiffs' first cause of action, Stip. and Order
Limiting Scope Rule 65(a)(2) Trial Plaintiffs' First Cause
Action and Deferring Other Matters Pending Disposition Same, ECF
No. 48.  The other seven counts in the Plaintiffs' complaint
were administratively closed.  Elec. Clerk's Notes, ECF No. 49.

The government filed the administrative record in two
pieces on June 30, 2016, and July 6, 2016.  See Notice Filing
Certified Provisional Admin. R., ECF No. 51; Notice Filing
Certified Second Provisional Admin. R., ECF No. 52.  On July 7,
2016, the parties filed cross-motions for summary judgment on
the first cause of action along with supporting memoranda.
United States' Mot. Partial Summ. J., ECF No. 55; United States'
Mem. Law. Supp. United States' Mot. Partial Summ. J. ("Defs.'
Mem."), ECF No. 56; Pls.' Mot. Summ. J. First Cause Action, ECF
No. 58; Pls.' Mem. Law Supp. Mot. Summ. J. ("Pls.' Mem."), ECF
No. 59.  The Court heard oral argument on the parties' summary
judgment motions on July 11, 2016, and took the matter under
advisement.  Elec. Clerk's Notes, ECF No. 67.  The parties have
since filed supplemental memoranda.  United States' Supp. Mem.
Law Supp. United States' Mot. Partial Summ. J. ("Defs.' Supp.

Mem."), ECF No. 81; Pls.' Post-Hearing Mem. Law ("Pls.' Supp. Mem."), ECF No. 82.[5]

## II.  ANALYSIS

The Plaintiffs' first cause of action challenges the Secretary's determination that the Mashpees are eligible beneficiaries of the IRA provision that grants the Secretary authority to acquire and hold land in trust "for the purpose of providing land for Indians."  25 U.S.C. § 465.  Specifically, the Plaintiffs argue that the Mashpees do not qualify as "Indian" under the definitions section of the IRA, 25 U.S.C. § 479, and accordingly, that the Secretary lacked authority to acquire land in trust for their benefit.  The government, meanwhile, contends that the definition of "Indian" at issue here is ambiguous, that the Secretary permissibly interpreted it to include the Mashpees, and that the Secretary's interpretation is entitled to deference.

The Court first discusses the standard of review it must apply in its review of these cross-motions.  It then sketches the applicable legal framework, before finally applying that framework to the particulars of this case.

### A.  Standard of Review

---

[5] The Court acknowledges with appreciation the briefs amicus curiae of the City of Taunton, ECF No. 68, and USET Sovereignty Protection Fund, Inc., ECF No. 83.

The Plaintiffs are entitled to judicial review of the
Department's action under Chapter 7 of the APA.  See 5 U.S.C. §§
702, 704.  The scope of the Court's review is governed by
Section 706, which provides that, "[t]o the extent necessary to
[its] decision and when presented, the reviewing court shall
decide all relevant questions of law, interpret constitutional
and statutory provisions, and determine the meaning or
applicability of the terms of an agency action."  Id. § 706.
Further, it empowers courts to "hold unlawful and set aside
agency action, findings, and conclusions" that are held to be,
inter alia, "arbitrary, capricious, an abuse of discretion, or
otherwise not in accordance with law;" or "in excess of
statutory jurisdiction, authority, or limitations, or short of
statutory right[.]"  Id.

The First Circuit has stated, somewhat confusingly, that an
agency's legal conclusions "engender de novo review, but with
some deference to the agency's reasonable interpretation of
statutes and regulations that fall within the sphere of its
authority."  Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir.
2012); see also Gourdet v. Holder, 587 F.3d 1, 5 (1st Cir. 2009)
("We review legal questions de novo, with appropriate deference
to the agency's interpretation of the underlying statute in
accordance with administrative law principles.") (internal
quotation marks and citation omitted).  This articulation of the

applicable standard of review is perplexing because de novo review means no deference ought be given. See, e.g., Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005) ("[N]o deference is given to the administrator's interpretation of the plan language. Rather, the court interprets the plan de novo[.]").

The Court interprets the First Circuit's statement as a muddled articulation of the two-step legal framework set forth in Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984). Under so-called Chevron deference, the Court must first ask "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter." Id. at 842; see also Holly Farms Corp. v. Nat'l Labor Relations Bd., 517 U.S. 392, 398 (1996) ("If a statute's meaning is plain, . . . reviewing courts must give effect to the unambiguously expressed intent of Congress.") (internal quotation marks and citation omitted). At this first step, then, the agency's interpretation receives no deference. If there is ambiguity -- i.e., the Court has determined that a statute is susceptible to multiple reasonable interpretations, see, e.g., Holly Farms Corp., 517 U.S. at 398-99 -- then the Court must defer to the agency's interpretation, so long as it is "rational and consistent with the statute," Sullivan v. Everhart, 494 U.S. 83, 89 (1990) (internal quotation

marks and citation omitted).  Thus, the First Circuit's
articulations of the standard of review of agency actions quoted
above are flawed to the extent they suggest that "some"
deference is always due an agency's reasonable interpretations
of its governing statute: in fact, the question of whether
statutory language is ambiguous is for the Court alone, and if
such language is not ambiguous, then no deference is due.  If
there is ambiguity, then the agency's reasonable interpretation
is controlling.

**B.  Legal Framework**

This case involves two provisions of the Indian
Reorganization Act (again, the "IRA").  The first is the section
from which the Secretary derives authority to acquire land "in
trust" for the benefit of an "Indian tribe or individual
Indian."  25 U.S.C. § 465.  That section provides, in relevant
part:

> The Secretary of the Interior is authorized, in his
> discretion, to acquire . . . any interest in lands . .
> . for the purpose of providing land for Indians.
>
> . . . .
>
> Title to any lands or rights acquired pursuant to this
> Act . . . shall be taken in the name of the United
> States in trust for the Indian tribe or individual
> Indian for which the land is acquired, and such lands
> or rights shall be exempt from State and local
> taxation.

Id.  Thus, acquisition is proper pursuant to Section 465
only if the beneficiary of such acquisition falls within
the statutory definition of "Indian."  Section 479 defines
this term as follows:

> The term 'Indian' as used in this Act shall include
> [1] all persons of Indian descent who are members of
> any recognized Indian tribe now under Federal
> jurisdiction, and [2] all persons who are descendants
> of such members who were, on June 1, 1934, residing
> within the present boundaries of any Indian
> reservation, and shall further include [3] all other
> persons of one-half or more Indian blood.

25 U.S.C. § 479 (numbers in brackets supplied).

The Supreme Court interpreted the first of these three
definitions of "Indian" in Carcieri v. Salazar, 555 U.S. 379
(2009).  As is the case here, Carcieri involved a tribe that was
not under federal jurisdiction at the time the IRA was enacted
in 1934, but was under federal jurisdiction by the date on which
land was purportedly taken into trust for its benefit.  See id.
at 384-85, 395.  The Supreme Court held that "the term 'now
under Federal jurisdiction' unambiguously refers to those tribes
that were under the federal jurisdiction of the United States
when the IRA was enacted in 1934."  Id. at 395.  Accordingly,
the tribe for whom the land was taken into trust was not
"Indian" for the purpose of Section 479, and in turn, the
Department was not entitled to take land into trust for the
tribe's benefit pursuant to Section 465.  See id. at 396

[12]

(reversing the First Circuit's holding that the Secretary was authorized to take the land at issue into trust for the tribe's benefit).

### C.   Application to the Plaintiffs' First Claim

The matter before the Court involves the second definition of "Indian" provided in Section 479 of the IRA.  It presents the question: are the Mashpees "descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian reservation"?  25 U.S.C. § 479.  To answer this requires defining the term "such members," and it is here that the parties diverge.

The Plaintiffs argue that "such members" plainly refers to the entire preceding clause in the first definition of "Indian" ("all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction").  Pls.' Mem. 8.  The government, meanwhile, contends that the phrase is ambiguous and that the Secretary reasonably interpreted it to refer only to the first several words of the preceding clause ("all persons of Indian descent who are members of any recognized Indian tribe").  Defs.' Mem. 1, 12-14.

This difference is critical, because under the Plaintiffs' reading, a descendant of a "recognized Indian tribe" will be an eligible beneficiary of the IRA's land-into-trust provision only if that tribe was under federal jurisdiction in June 1934 (when

the IRA was enacted).  By contrast, under the government's
reading, descendants may qualify as "Indian" under Section 479
even if their tribal ancestors were not under federal
jurisdiction in 1934.  As the Mashpees gained federal
recognition in 2007, they are excluded from the version of the
second definition of "Indian" proffered by the Plaintiffs, but
they fall within such definition under the Secretary's reading.

     As described supra, the Court, in reviewing an agency's
legal interpretation under the APA, must first determine whether
the statutory phrase at issue is ambiguous.  In doing so, the
Court begins, as it must, with the plain meaning of the relevant
statutory language.  See, e.g., In re Rudler, 576 F.3d 27, 44
(1st Cir. 2009).  Here, that language is the second statutory
definition of "Indian."  With respect, this is not a close call:
to find ambiguity here would be to find it everywhere.

     Post-Carcieri, Section 479 of the IRA effectively reads:

     The term 'Indian' as used in this Act shall include
     [1] all persons of Indian descent who are members of
     any recognized Indian tribe . . . under Federal
     jurisdiction [in June 1934], and [2] all persons who
     are descendants of such members who were, on June 1,
     1934, residing within the present boundaries of any
     Indian reservation, and shall further include [3] all
     other persons of one-half or more Indian blood.

25 U.S.C. § 479.  The second definition of "Indian" uses the
word "such" to indicate that the "members" to which it refers
are those described in the first definition.  See Merriam

<u>Webster's Collegiate Dictionary</u> 1247 (11th ed. 2003) (defining "such" as "of the character, quality, or extent previously indicated or implied"); <u>American Heritage Dictionary</u> 1729 (4th ed. 2000) (defining "such" as "[o]f a kind specified or implied" and "[o]f a degree or quality indicated").  In the wake of <u>Carcieri</u>, the Plaintiffs' interpretation is the one compelled by the plain text of the statute, and thus the Court "must apply [it] according to its terms."  <u>Carcieri</u>, 555 U.S. at 387 (internal citations omitted).  This means that, despite their subsequent acknowledgement by the federal government, for purposes of Sections 465 and 479 of the IRA the Mashpees are not considered "Indians" because they were not under federal jurisdiction in June 1934.  Thus, the Secretary lacked the authority to acquire land in trust for them, at least under the rationale the Secretary offered in the Record of Decision.  <u>See</u> <u>id.</u> ("The Secretary may accept land into trust only for 'the purpose of providing land for Indians.") (citing 25 U.S.C. § 465).

The Court finds support for its statutory analysis from that of Judge Ketanji Brown Jackson of the District of Columbia, who was tasked with interpreting somewhat analogous statutory language.  <u>See</u> <u>Takeda Pharms., U.S.A., Inc.</u> v. <u>Burwell</u>, 78 F.Supp.3d 65 (D.D.C. 2015), <u>appeal filed</u> <u>Takeda Pharms. U.S.A., Inc.</u> v. <u>Burwell</u>, 15-5021 (D.C. Cir. Jan. 26, 2015) (internal

citations omitted).  In Takeda, the D.C. District Court
interpreted Section 355 of the Federal Food, Drug, and Cosmetic
Act, 21 U.S.C. § 355.  Id. at 68.  Paragraph 2 of that section
states:

> An application submitted . . . shall also include—
>
> (A) a certification, in the opinion of the applicant
> and to the best of his knowledge, with respect to each
> patent which claims the drug for which such
> investigations were conducted or which claims a use
> for such drug for which the applicant is seeking
> approval under this subsection and for which
> information is required to be filed under paragraph
> (1) or subsection (c) of this section[.]"

21 U.S.C. § 355(b)(2)(A) (emphasis added).  The court
explained that "[t]he term 'such,' when used as an
adjective, is an inclusive term, showing that the word it
modifies is part of a larger group . . . . and, even more
important, 'such' nearly always operates as a reference
back to something previously discussed."  Id. at 99.  The
court held that, "in accordance with its plain meaning, the
term 'such drug' unambiguously refers back to the 'drug for
which such investigations were conducted[.]"  Id. at 99.
In so doing, that court rejected the interpretation
proffered by the plaintiffs that removed the language "for
which such investigations were conducted" from the referent
antecedent phrase, effectively "ignor[ing] 'such' entirely,
and . . . replac[ing] it with 'the[.]'"  Id.

The Ninth Circuit's analysis in <u>University Medical Center</u> <u>of Southern Nevada</u> v. <u>Thompson</u>, 380 F.3d 1197 (9th Cir. 2004) also sheds light on the question of whether and when there exists ambiguity with respect to the antecedent phrase referenced by the word "such."  There, the court was charged with interpreting a paragraph of the Medicare statute that described a hospital that

> is located in an urban area, has 100 or more beds, and can demonstrate that its net inpatient care revenues (excluding any of such revenues attributable to this subchapter or State plans approved under subchapter XIX of this subchapter), during the cost reporting period in which the discharges occur, for indigent care from state and local government sources exceed 30 percent of its total of <u>such net inpatient care</u> <u>revenues</u> during the period.

42 U.S.C. § 1395ww(d)(5)(F)(i)(II) (emphasis added).  The parties there disputed "whether the word 'such' in the phrase 'such net inpatient care revenues' refers back to 'net inpatient care revenues (excluding any of such revenues attributable to [Medicare or Medicaid])' or simply to 'net inpatient care revenues,'" with University Medical Center arguing for the former reading.  380 F.3d at 1199-1200 (alterations in original).  While the court ultimately concluded that the phrase "such net inpatient care revenues" did <u>not</u> reference the more complete version of the antecedent phrase, it arrived at this conclusion only because of the statute's inclusion of the word "total" before the "such" phrase.  <u>Id.</u> at 1200.  The court was

clear that in the absence of "total," the plain meaning of

"such," referring back to the entire antecedent, would control:

> In the context of this statute, the word 'total'
> implies that the word 'such' refers to aggregate net
> inpatient care revenues, and that the Medicare and
> Medicaid payments that were previously deducted from
> net inpatient care revenues for purposes of
> determining a hospital's revenue from non-federal
> sources should not be added back for purposes of
> determining a hospital's revenue from all sources.
> [University Medical Center]'s interpretation would be
> correct -- and the statute would unambiguously support
> its interpretation -- if the words 'its total of' were
> deleted and the statute read '30 percent of such net
> inpatient care revenues.'  In this circumstance the
> antecedent would be unmistakable.

Id. at 1200-01 (emphasis supplied).

Unlike the Medicare statute at issue in University Medical

Center, however, there is no language in Section 479 of the IRA

to indicate that the term "such members" references only a

portion of the antecedent phrase "members of any recognized

Indian tribe now under Federal jurisdiction[.]"  Thus, as in the

hypothetical version of the Medicare statute the court

considered in University Medical Center, 380 F.3d at 1201, the

term "such" here "unmistakabl[y]" references the entire

antecedent phrase.

The government argues that the phrase "such members" is

ambiguous not based on principles of grammar or syntax, but

rather based on the legislative history of the IRA.  See Pls.'

Mem. 7 ("[N]othing in the legislative history indicates that

[the Plaintiffs' reading of the second definition] is what Congress intended"). To look beyond the unambiguous plain meaning in order to discern congressional intent, however, is improper. See, e.g., Barnhill v. Johnson, 503 U.S. 393, 401 (1992) ("[A]ppeals to statutory history are well taken only to resolve statutory ambiguity") (internal quotation marks and citation omitted); Palmieri v. Nynex Long Distance Co., 437 F.3d 111, 115 (1st Cir. 2006) ("We have consistently held that when the plain meaning of a statute is clear, we are not to look beyond that text to discern legislative intent."); People To End Homelessness, Inc. v. Develco Singles Apartments Assocs., 339 F.3d 1, 5 (1st Cir. 2003) ("When the language of a statute is plain and admits of no more than one meaning the sole function of the courts is to enforce the statute according to its terms.") (internal quotation marks, citations, and alterations omitted). Only in "rare and exceptional" circumstances is such further inquiry appropriate. Mullane v. Chambers, 333 F.3d 322, 330 (1st Cir. 2003) (internal citation and quotation marks omitted).

The government appears to argue that this case presents just such anomalous circumstances because adopting the Plaintiffs' reading of Section 479 would render the second statutory definition of "Indian" "entirely surplus." Defs.' Mem. 1. The Court, however, fails to see how this is so. Under

the Plaintiffs' reading, the second definition covers
descendants of members of recognized Indian tribes that were
subject to federal jurisdiction in 1934 and who were also living
on Indian reservations at that time.  This is distinct from the
first definition, which requires actual membership in a tribe
that was under federal jurisdiction in 1934 in order to qualify
as "Indian."  See 25 U.S.C. § 479 (referencing "all persons of
Indian descent who are members of any recognized Indian tribe
now under Federal jurisdiction") (emphasis supplied).  It is
surely plausible that not all descendants of members of tribes
that were under federal jurisdiction in 1934 and whose members
resided on Indian reservations are also members of such a tribe.[6]
Indeed, while descendancy may be a factor in determining
membership it is not necessarily determinative.  See, e.g., B.J.
Jones, In Their Native Lands: The Legal Status of American
Indian Children in North Dakota, 75 N.D. L. Rev. 241, 241 n.3
(1999) ("Most Indian tribes determine membership by a process of
enrollment whereby one must demonstrate that she meets the
various requirements of membership . . . . There is no one
generally-accepted definition of an 'Indian,' although it is

---

[6] The government acknowledges as much in its supplemental
memorandum.  See Defs.' Supp. Mem. 5 ("To be sure, one could be
a descendant of a 'recognized Indian tribe' who is not a member
of that tribe, and thus need to resort to the reservation
residence requirement[.]").

generally acknowledged that Indian tribes have the inherent

authority to determine their own membership").[7]

Having concluded that the Secretary erred in finding that

the Mashpees fell within the second definition of "Indian"

provided in Section 479 of the IRA, the Court need not address

the Plaintiffs' additional arguments regarding the Mashpees'

recognition as a tribe, Pls.' Mem. 25-28, and the residence-on-

a-reservation requirement, id. at 28-30.[8]

**III. CONCLUSION**

---

[7] What is more, even were the government's surplusage argument convincing, it is not clear that this would cause the Court to depart from the plain text of the IRA.  The First Circuit has held that, where statutory language is unambiguous, "we consider Congress's intent only to be certain that the statute's plain meaning does not lead to 'absurd' results."  In re Rulder, 576 F.3d at 44-45 (citing Lamie v. United States, 540 U.S. 526, 534 (2004)); see also Pritzker v. Yari, 42 F.3d 53, 67-68 (1st Cir. 1994) ("As a fundamental principle of statutory construction, we will not depart from, or otherwise embellish, the language of a statute absent either undeniable textual ambiguity . . . or some other extraordinary consideration, such as the prospect of yielding a patently absurd result") (internal citations omitted).  The government has not argued that adopting the Plaintiffs' interpretation produces "absurd" results.

[8] To the extent the Plaintiffs argue that Carcieri stands for the principle that there exists no ambiguity as to any of the terms used in Section 479, see Pls.' Supp. Mem. 3, however, the Court considers this too broad a reading of that case.  As the government has pointed out, courts reviewing decisions of the Secretary since Carcieri have agreed with the Secretary that certain terms are ambiguous and have deferred to the Secretary's interpretation of those terms.  See Defs.' Mem. Opp'n Prelim. Inj. 3-4.

Upon thorough consideration of the parties' submissions, the Court rules that the second definition of "Indian" in Section 479 of the IRA unambiguously incorporates the entire antecedent phrase -- that is, "such members" refers to "members of any recognized Indian tribe now under Federal jurisdiction." Thus, no deference is due the Secretary's interpretation.  In light of the Supreme Court's interpretation of "now under Federal jurisdiction" to mean under Federal jurisdiction in June 1934, the Secretary lacked the authority to acquire land in trust for the Mashpees, as they were not then under Federal jurisdiction.  See Carcieri, 555 U.S. at 382-83.

In keeping with the parties' stipulation and to enable a prompt appeal of this declaration, the Court determines there is no just cause for delay, Fed. R. Civ. P. 54(b), and enters this declaratory judgment on the Plaintiffs' first cause of action. The matter is remanded to the Secretary for further proceedings consistent with this opinion.

**SO ORDERED.**

/s/ William. G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE