DAVID LITTLEFIELD et al.,

      Plaintiff,

   v.

UNITED STATES DEPARTMENT OF THE
INTERIOR, et al.,

      Defendant.

Civil Action No. 1:16-cv-10184-WGY

## NOTICE OF PLAINTIFFS' REQUEST FOR STATUS CONFERENCE
## AND FEDERAL DEFENDANTS' / DEFENDANT-INTERVENOR'S OPPOSITION

### INTRODUCTION

This combined submission follows a series of emails with this Court's staff commencing February 22, 2018 (initiated by counsel for Plaintiffs) and culminating with an email from the Courtroom Deputy Clerk on March 14, 2018, in which Ms. Gaudet suggested that the parties submit a joint motion for a status conference. (Copies of the pertinent emails are attached hereto as Exhibit A).

The parties conferred but could not agree on such a motion. Instead, the parties agreed to proceed by filing a single document in which Plaintiffs present their request for a status conference and the Federal Defendants and Defendant Intervenor Mashpee Wampanoag Tribe oppose it.

In requesting and opposing the status conference, the parties present their contentions as to the need for a status conference as well as the Court's jurisdiction to entertain such a conference and grant relief.

<u>**PLAINTIFFS' POSITION**</u>

<u>**A Status Conference is Needed to Address Interior's
Persistent and Unreasonable Delays in
Concluding the Court-Ordered Remand**</u>.

**A.      Introduction**

Plaintiffs seek to enlist the Court's help to bring the lengthy remand proceedings—which

have stretched unnecessarily for nearly 18 months—to a conclusion. Even now, Interior has

refused to commit to any firm deadline.  In its most recent communication on March 14, 2018,

Interior provided a non-committal "two to three months" estimate for issuing a final decision. As

set out in Section I(C) below, there is no legitimate reason for the delays and little reason to

believe Interior will issue a decision on its own accord, whether in two to three months or ever.

The only issue that remains for Interior to decide is a narrow legal question on which

Interior requested special supplemental briefing: Whether the actions of the Commonwealth of

Massachusetts, taken under state law, could be deemed the equivalent of federal action under

federal law (applying so-called "surrogacy principles") for purpose of satisfying the "under

federal jurisdiction" (UFJ) requirement in the Indian Reorganization Act of 1934, 25 U.S.C. §

5108.  It is a question that came out of nowhere and posits a theory that has no known support in

the law.  Prior to raising this issue for the first time in June 2017, Interior had completed its UFJ

analysis of the Tribe, applying the IRA requirement in keeping with  the Supreme Court's

decision in *Carcieri v Salazar*, 555 U.S. 379 (2009). Interior even issued a formal remand

decision on June 19, 2017 in which it rejected every jurisdictional argument presented by the

Tribe under existing law—but then provided a copy of that decision only to the Tribe.  When the

Tribe objected to Interior's unfavorable conclusion, Interior decided to withdraw the decision

and mark it "draft" it, while contemporaneously directing the parties to engage in supplemental briefing on a new legal issue never before raised in this or any other land-into-trust case.

This so-called "surrogacy theory" is completely unprecedented. It has never been adopted by a court. No authority even suggests that a party has ever asked a court to treat state action as federal action under the IRA and thereby conflate state and federal jurisdiction in defiance of the dual sovereign structure of the Constitution. Accepting it—thereby making actions of states legally indistinguishable from actions of the Federal Government—would (among other things):

- eliminate the UFJ requirement from the IRA since every tribe understate jurisdiction also would be under federal jurisdiction;

- un-do every land claim decision of the federal courts, all of which are premised on the legal separation of state and federal authority in Indian treaty-making; and

- violate the Constitution by turning states into the instrumentalities of the Federal Government.

Put bluntly, the "surrogacy theory" is nonsense.[1]

The fact that Interior raised this unprecedented, never-before-articulated and implausible theory at the eleventh hour says much about its validity. The fact that this theory remains undetermined by Interior nine months later—and fast going on a year—defies rational explanation. The unreasonableness of Interior's delay is demonstrated by the fact that Interior completed its *entire* UFJ remand analysis in six months. That process included reviewing

---

[1] Interior's request for supplemental submissions on the "surrogacy issue" framed it as having purportedly been raised by the First Circuit's decision in *Joint Tribal Council of Passamaquoddy Tribe v. Morton*, 528 F.2d 370, 374-75 (1st Cir. 1975). Interior asserted that "[t]he First Circuit there found that before its admission to the Union as a state, Maine comprised a district within the Commonwealth of Massachusetts" and that "[i]n considering legislation to admit Maine as a state, Congress had notice of Massachusetts' exercise of authority over Indian affairs in the State." Plaintiffs invite the Court to review *Passamaquoddy*. Nothing in that decision even suggests, let alone supports or adopts, the notion that the acts of Massachusetts to exercise jurisdiction over Indians within its borders under state law (including the District of Maine pre-Maine statehood) could, under "surrogacy" principles, be deemed acts of the Federal Government for purposes of establishing UFJ under the IRA, or otherwise.

4815-5921-1871.6

voluminous historical materials and lengthy briefs, and preparing a 33-page decision. In its decision, dated June 19, 2017 (and later withdrawn under highly irregular circumstances described below in I(C)), Interior did what this Court's remand order permitted: Interior applied its established two-part test for evaluating a tribe's UFJ status (DOI Solicitor's M-37029 (March 12, 2014)) and concluded the Mashpees were not under federal jurisdiction in 1934 and thus were not eligible to have lands taken into trust under the IRA.

Leading up to the June 19, 2017 decision, Plaintiffs **and the Tribe** consistently pressed Interior to issue a decision given the important interests at stake and the fact that the remand had been pending since December 2016. Interior responded to those joint pleas when in April 2017 it set June 19, 2017, as a date certain by which it would issue its decision. And Interior in fact prepared the decision by that firm date, keeping its commitment to the parties.

In contrast, the supplemental remand process relating to the "surrogacy theory"—ordered at the same time the June 19 Decision was withdrawn—drags on and on without Interior ever committing to a date certain by which it will end. Interior's continually shifting estimated time periods for completing the process have proved unreliable—and, oddly, now only the Plaintiffs are pressing for finality. Only Plaintiffs are urging Interior to issue its decision and end the remand. And the Tribe is not just remaining silent. It opposed Plaintiffs' request last summer to shorten the supplemental briefing schedule and is now opposed to having this Court hold a status conference to explore facilitating a resolution of the unending remand. Interior also is inexplicably opposed to doing now what it previously agreed to do—and did— nearly a year ago in light of the then pressing concerns, which have only gotten more pressing: Set a date certain to bring the remand process to a close.

Interior's persistent refusal to set a date certain at any time since October 30, 2017, when the parties made their final exchange, and the absence of any complaints from the Tribe, can only be understood as giving the Tribe what it wanted: an indefinite reprieve from the unfavorable June 19 Decision.[2] But Interior's persistent delays are unreasonable on their face and work substantial injustice to Plaintiffs who remain deprived of a final decision and the certainty that a final judicial determination brings. The First Circuit appeal is stymied by Interior's inaction which further delays a final judicial resolution. Plaintiffs have been contesting Interior's land-into-trust plans for the Tribe for nearly six years. The lands in East Taunton remain under a cloud as Interior and the Tribe continue to contend (wrongly) that the lands remain in trust and constitute an Indian reservation, when this Court determined the Secretary acted without lawful authority when taking the lands into trust in the first place.

For the benefit of all stakeholders, Interior must end the remand process, re-issue its June 19 Decision complete with the conclusion that the "surrogacy theory" changes nothing. An essential part of the remand termination is the formal un-winding of the trust and reservation status of the lands in East Taunton. If Interior will not take these steps on its own accord, then this Court must order that relief, or the judicial authority of this Court, as expressed in its July 28, 2016, order, will have been exercised in vain, and its order rendered nugatory by agency inaction.

If the Court agrees that Interior is engaging in unreasonable foot-dragging—and the facts support no other conclusion—this Court has the jurisdiction and the tools available to it end it,

---

[2] The Tribe has used the past nine months to address its financial troubles, as it reportedly owes more than $475 million to its Malaysian backers (who have all-but written off the debt) as well as explore possible legislative help at both the state and federal level. It is not Interior's job to delay issuing a remand decision so a tribe can find a way to work around it. Interior like all other federal agencies has an obligation to decide the matters before it promptly, efficiently, and fairly. It has done none of that.

including, at the very least, by imposing a date certain by which Interior will decide the supplemental briefing question and issue its final UFJ decision.  The Court's jurisdictional authority  to grant that and other relief is explained in Section I(B) below.  The appeal was certified under Rule 54(b) and concerns only the First Cause of Action—and is being pursued only by the Tribe. The Federal defendants voluntarily withdrew their appeal by motion dated April 27, 2017 and the First Circuit's mandate followed (Dkt 139), restoring this Court's jurisdiction over the Federal Defendants and the judgment rendered against them. This Court has plenary jurisdiction over all other parts of the case which it can administratively restore at any time.  And even if the Court believed the First Circuit appeal somehow divested the court of jurisdiction to grant affirmative relief under that cause of action, even as to the non-appealing Federal Defendants, the Court unquestionably has jurisdiction to entertain a motion under Fed. R. Civ. P. Rule 62.1 to make an "indicative ruling."

**B.      Procedural and Jurisdictional Questions**

**1.      The July 28, 2016, Motion for Summary Judgment on First Cause of Action and Rule 54(b) Certification of Same.**

The Federal Defendants and Plaintiffs stipulated to have an expedited trial on the First Cause of Action (the "*Carcieri* issue), which challenged the Secretary's authority to take land into trust for the Tribe under the IRA.  (Dkt 46, 48, 50.)  The Court administratively closed the balance of the case pertaining to the other causes of action in the Amended Complaint (Causes of Action Two through Eight). (Dkt 49.)

The Court held trial on July 11, 2016 (Dkt 67) and issued its decision on July 28, 2016. (Dkt 87)  (hereafter "7/28/16 Decision").  In that decision, the Court overturned Interior's Record of Decision (dated September 18, 2015), which took land into trust for the Tribe under the IRA.

4815-5921-1871.6

The 7/28/16 Decision certifies the First Cause Action for an immediate appeal under Fed. R. Civ. P. Rule 54(b), in keeping with the parties' stipulation. (Dkt 88.)

The Federal Defendants' moved for reconsideration/clarification asking the Court to make clear that the 7/28/16 Decision did not foreclose Interior from evaluating whether the Tribe might satisfy the "under federal jurisdiction" (UFJ) requirement in the IRA. (Dkt 99, 100.) The Court's October 12, 2016 ruling provided the requested clarification, clearing the way for Interior to review the Tribe's UFJ status. (Dkt 121.)

The Federal Defendants appealed the 7/28/16 and 10/12/16 Decisions but later voluntarily withdrew their appeal by motion dated April 27, 2017. (Dkt 131, 138.) The First Circuit granted that motion on May 8, 2017 and on the same date issued a mandate that returned to the district court the case as against the Federal Defendants. (Dkt 139.)

The Tribe also appealed the 7/28/16 Decision (Dkt 132) but has not pursued its appeal. Instead, it has sought and obtained repeated adjournments based on the pendency of the remand process.

> **2.** **The Rule 54(b) Certification, Permitting an Immediate Appeal as to the First Cause of Action, Left the District Court with Jurisdiction Over the Remaining Seven Counts, Which the Court Administratively Closed.**

As an initial matter, the "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control *over those aspects of the case involved in the appeal*." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (emphasis added); *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985). Accordingly, "[t]he district court maintains jurisdiction as to matters not involved in the appeal, such as the merits of an action when appeal from a preliminary injunction is taken, or in aid of the appeal, as by making clerical corrections."

*Lopez Dominguez v. Gulf Coast Marine & Assocs., Inc.*, 607 F.3d 1066, 1073 (5th Cir. 2010)

(quoting *Farmhand, Inc. v. Anel Eng'g Indus., Inc*., 693 F.2d 1140, 1145 (5th Cir. 1982)).

In the specific context of a partial judgment entered under Rule 54(b), where a single,

separable claim is broken off and made the subject of the appeal, the district court retains

jurisdiction over the other separable claims, and may proceed to decide them, notwithstanding

the filing of a notice of appeal. *Pueblo of Pojoaque v. New Mexico,* 233 F. Supp. 3d 1021, 1109,

2017 U.S. Dist. LEXIS 18662, *214-215 (D. N.M. 2017) (citing and quoting 20 Moore's Federal

Practice § 303.32[2][b][v] (3d ed. 2016)).  The third edition of Moore's Federal Practice

specifically provides:

> If an appeal is taken from a judgment that does not finally determine the entire action, the appeal does not prevent the district court from proceeding with matters not involved in the appeal. The filing of a timely and effective notice of appeal divests the district court of jurisdiction only with respect to the judgment brought up for review by the appeal. As an example, an appeal from an order granting or denying a preliminary injunction does not divest the district court of jurisdiction to proceed with the action on the merits. <u>Similarly, an appeal from an order that is appealable by virtue of certification under Rule 54(b) does not prevent the district court from proceeding with the remaining claims.</u>

20 Moore's Federal Practice § 303.32[2][b][v] (3d ed. 2016) (emphasis added) (footnotes

omitted).[3]

"The divestiture rule is a rule of judicial economy designed to avoid the confusion and

waste of time that might flow from putting the same issues before two courts at the same time."

---

[3] *See also Nucor Corp. v. Emplrs Ins. Co*., 2014 U.S. Dist. LEXIS 188773, at *3 (D. Ariz. Nov. 18, 2014) ("During the pendency of an appeal from a judgment under Fed. R. Civ. P. 54(b) … a district court retains jurisdiction to proceed with remaining claims") (citing *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980)); *Bridge v. Ocwen Fed. Bank*, 2014 U.S. Dist. LEXIS 74192, at *8-9 n.5 (N.D. Ohio May 30, 2014) ("By certifying a partial final judgment for appeal pursuant to Rule 54(b), the Court does not divest itself of jurisdiction over the remaining claims") (citing  *Karim-Panahi v. Los Angeles Police Dept*, 15 F.3d 1086 (9th Cir. 1994); cf. *Cain v. Graf*, 1998 U.S. App. LEXIS 23283, at *5 (10th Cir. 1998) (observing that Rule 54(b) does not transfer entire action, but only specific claims mentioned; district court does not lose jurisdiction over claims not transferred).

8

*Stein v/ Wood*, 127 F.3d 1187, 1189 (9th Cir. 1997) (internal quotes omitted). The divestiture rule thus permits the district court to proceed to adjudicate claims that are separate from the one certified under Rule 54(b) for immediate appeal.

**3.** **This Court's Narrow Rule 54(b) Certification Regarding the *Carcieri* Issue in the First Cause of Action Leaves this Court with Jurisdiction Over Every Other Claim.**

Here the Rule 54(b) partial judgment addressed a single, discrete legal question, framed by the First Cause of Action of Plaintiffs' Amended Complaint (Dkt 12), regarding Interior's authority to take land into trust for the Mashpees under the IRA. (See *id.* at 24 ("FIRST CAUSE OF ACTION: A Declaration that the Department of the Interior Lacks Statutory Authority to Take Land into Trust for the Mashpees Because the Mashpees Are Not Eligible Under the IRA").

The other seven causes of action raised separate challenges to the ROD.

- The Second Cause of Action alleged the ROD was arbitrary, capricious and contrary to law in its finding that the Mashpees had a meaningful historical connection to the lands in East Taunton (Amended Complaint at 26-28).

- The Third Cause of Action challenged the ROD's determination that two physically distant land-into-trust acquisitions (50 miles apart) could both serve as the Mashpees' "initial reservation" for purposes of the Indian Gaming Regulatory Act, which was entirely unprecedented. (Id. at 28).

- The Fourth Cause of Action contested the ROD's finding that the Mashpees' "plantation" in Massachusetts, created under Massachusetts law, constituted a reservation within the meaning of the IRA, and that such a reservation existed in 1934. (Id. at 29-30).

- The Fifth Cause of Action alleges that the land acquisition authority granted to the Secretary under the Indian Reorganization Act of 1934 (now codified at 25 USC 5108) constitutes an unconstitutional delegation.

- The Sixth Cause of Action and Seventh Cause of Action address the Secretary's abandonment of its self-stay policy and decision to take land into trust immediately, before judicial review occurs, in violation of the APA.

4815-5921-1871.6

- The Eighth Cause of Action seeks mandamus to compel the immediate removal of the land from trust.

This Court can administratively restore some or all of these causes of action if doing so provides a further jurisdictional foundation to act with respect to the relief sought. Each of these separable causes of action remained in the district court following the appeal of the First Cause of Action pursuant to Rule 54(b). In any event, this Court has jurisdiction over the Federal Defendants even as to the First Cause of Action because the Federal Government abandoned their appeal and the First Circuit issued its remand.

**C.      Remand Proceedings Before Interior, October 2016 to Present**

By letter dated December 6, 2016, Interior set forth a briefing schedule to re-visit the question of the Mashpees' eligibility under the UFJ requirement. The parties submitted voluminous materials with all briefing concluded in February 2017. Both sides pressed Interior to issue a timely decision, given the important interests at stake. On April 19, 2017, Interior notified the parties that it would issue a decision on or before June 19, 2017. Interior in fact prepared a decision by June 19, 2017, in which Interior found that the Mashpees did not satisfy the UFJ requirement, consistent with its years of prior study (2012-2015) and as required by *Carcieri*.

The June 19, 2017, Decision is 33-pages in length and is signed by Deputy Secretary James A. Cason. It applies the Department's standard two-part test for evaluating UFJ status of tribes and correctly applied those standard to find the Mashpees were not UFJ. Instead of releasing the June 19 Decision to both sides (the Tribe and the *Littlefield* Plaintiffs) on the decision date as Interior had promised to do, Interior released the Decision only to the Tribe. In response, the Tribe informed Interior that it was withdrawing its application to avoid the issuance of the (unfavorable) decision. Interior refused to allow the Tribe to withdraw its application.

10

The Tribe continued to lobby Interior to delay issuing the Decision. In response to the Tribe's further lobbying, Interior agreed to not only withdraw the June 19 Decision but also to direct the parties to provide additional briefing on a novel issue that had not been raised by either party (or Interior) in this case, or by any party in any other land-into-trust case—*ever*—the so-called "surrogacy theory." Interior's actions are documented in a letter (and attachments) from Deputy Secretary Cason on June 30, 2017. Copies are attached as Exhibit B. Plaintiffs first learned about the June 19 Decision on June 30, after it was issued and withdrawn in response to the Tribe's objections.

Interior's engagement with the Tribe—its actions in unilaterally releasing the Decision to the Tribe but not the *Littlefield* Plaintiffs on the promised release date, and then withdrawing the Decision upon being challenged by the Tribe—violates every concept of due process and fair play. It constitutes inappropriate *ex parte* communication in the context of the *Littlefield* litigation and the court-ordered remand. It should not be tolerated by this Court. The supplemental briefing request was spawned from this improper ex parte engagement on decision-day, and is properly viewed with suspicion even apart from its obviously defective nature.

In response to this out-of-the-blue supplemental briefing request on a narrow and nonsensical legal premise, Plaintiffs proposed to shorten the four-month briefing schedule to five weeks. But the Tribe opposed shortening the schedule, and Interior rejected Plaintiffs' request. Interior directed the parties to submit simultaneous briefs on August 30, 2017 (opening briefs) and October 30, 2017 (responsive briefs). It later permitted the Aquinnah Tribe to submit a short brief by October 30 and gave the parties the opportunity to submit short responsive briefs by November 14, 2017. For all intents and purposes, the briefing was complete on October 30, 2017, when the parties made their final exchange.

During a meeting with Plaintiffs' counsel on August 25, 2017, Interior Deputy Secretary James Cason explained that his decision to withdraw the June 19 Decision after sharing it with the Tribe was intended to allow Interior to look into one additional legal question, which he likened to looking under every rock to see if something might be there—not knowing if anything was. During an earlier meeting Deputy Secretary Cason freely acknowledged that the Department "has a hard time saying 'no' to tribes." Interior has now looked under that rock, knows nothing is there, but refuses to say so, proving how reluctant it is to turn down a tribe's land-into-trust application even when required by law.

**D.     Interior's Refusal to Issue Final Decision or Even to Commit to a Date by Which It Will Do So**

On December 15, 2017—45 days after the parties' substantial briefs were submitted and 30 days after the final Aquinnah briefs had been submitted—Plaintiffs' counsel asked Interior (Associate Solicitor Eric Shepard) for a status report on the decision, hoping to get a commitment from Interior to issue the supplemental remand decision before year's end. Four days later, Mr. Shepard responded saying "it is not possible to predict the precise date when we will have a final decision. Given our current caseload I do not expect a decision before mid-February."

Plaintiffs' counsel reached out to Interior's trial counsel in the *Littlefield* matter (DOJ Trial Attorney Steven Miskinis) to try to get a better understanding of the asserted reasons for such a large delay (90 days) in rendering a decision. His email on January 4, 2018 explained the mid-February scheduling:

> Eric confirmed that the deadline they are shooting for is mid-February … the submissions that must be reviewed are lengthy and any draft decision must go through an approval process involving decision-makers who are not willing to be committed to a firm deadline.   Interior's schedule leaves

January for reviewing submissions and drafting with the first weeks of February for securing review and approval.

On February 15, having heard nothing from Interior, Plaintiffs' counsel emailed Associate Solicitor Shepard, and called him again on February 20. This prompted a response from Mr. Shepard on February 20 that did not commit to a firm deadline or even offer a ballpark estimate for when a decision might be issued:

> I am unable to provide a specific date by which the Department will issue a remand determination given our other responsibilities. Nevertheless I assure you that this remains a top priority and I can commit to reaching out to the parties again in 30-days to provide you with a status update.

Plaintiffs' counsel reached out to DOJ Trial Attorney Miskinis on March 9 and 12 to try to get a better read on Interior's delays. This prompted a response from Mr. Miskinis on March 13, one that moves the goal posts further back "two to three months," and again without a firm commitment:

> As you are aware, supplemental briefing concluded on November 14, 2017 with the result that Interior had to consider briefs totaling 250 pages along with 1502 pages of exhibits submitted by all parties in total. Moreover, the primary attorney assigned to the matter has left the Department and Interior continues to face staffing issues. While Interior hoped to have a decision by this point, it is now clear that arriving at a decision will require additional deliberations, likely taking two to three months more.

Plaintiffs have abided Interior's unreasonably long initial briefing schedule (after unsuccessfully trying to shorten it) and now face unreasonable and lengthening timelines for a decision to issue. Interior is taking far longer to decide this supplemental question than it took to decide the whole UFJ analysis. The volume of papers submitted on supplemental briefing is less than the total volume of papers Interior reviewed for the main UFJ analysis. And as this Court well knows, a big stack of papers is hardly a fair indication of the difficulty of a case, or even the time required to decide the matter. This is especially true, where, as here, the only decision is a

13

legal one. The "surrogacy theory" should be no harder to reject than the theory that the earth is flat.

Even if that theory presented a legitimate open question of law (it does not), reasonable legal analysis would take far less time than the substantive, initial UFJ analysis, and the written disposition of it would take a small fraction of the 33 pages used by Interior to resolve the Tribe's UFJ status under existing law.

This remand should have ended upon Interior's issuance of its Decision on June 19, 2017. Instead, Interior pulled that Decision back and sent the parties on a wild goose chase looking for non-existent authority for a non-existent "surrogacy theory." In short, Interior has taken this Court's remand order as an invitation to examine frivolous legal issues and to indefinitely delay rendering a final decision. But it is Interior's legal duty to comply with the law and to complete a lengthy and expensive administrative process that bears on critical rights and interests of the parties, and this Court certainly has the authority to compel Interior to do these things.

**E.      This Court Has Numerous Tools at Its Disposal to Help Facilitate the Prompt Completion of the Remand Process**

Plaintiffs believe an in-person status conference would identify one or more paths forward to achieve the end of the remand process. One path—the easiest—would be for Interior to simply issue its UFJ decision, which was completed last June subject to one last minute "look under every rock" legal theory to be decided. It already has had four and a half months to review the parties' papers on that lone issue, a complete legal non-starter. Interior should commit to issue its decision in thirty days, which would give it nearly six months of deliberations, or it should be required to do so by this Court.

If a date certain is not attainable by agreement, Plaintiffs wish to discuss with the Court several possible steps that could be taken in litigation that might help conclude the remand process and put an end to this lengthy and expensive ordeal.  These steps include:

- <u>Setting a deadline under Court's inherent authority.</u>  The Court could issue an order setting a deadline for Interior to conclude the remand, which could be issued under the Court's inherent authority to enforce its prior orders including those aspects of the 7/28/16 decision and 10/12/16 Decision that permitted the remand. The Court has jurisdiction to issue such an order against the Federal Defendants since they are bound by those prior decisions upon abandoning their appeal and the First Circuit issuing its remand.

- <u>Granting relief to Plaintiffs regarding the "trust lands" in East Taunton.</u>  The Court could issue an order requiring the "trust lands" to be taken out of trust and rescinding the reservation proclamation, in keeping with the 7/28/16 Decision and the final judgment entered against the Federal Defendants.  This would provide in large measure the legal benefits of this Court's rulings and would likely motivate Interior to issue its UFJ determination.

- <u>Issue a conditional order.</u>  Another possibility might be for this Court to issue a conditional order, providing that Interior will issue the UFJ remand decision within 30 days, or failing that, will take the land out of trust and rescind its reservation proclamation, in keeping with the Court's 7/28/16 Decision.

- <u>Grant a writ of mandamus to compel Interior to issue its decision by a date certain.</u> This would require Plaintiffs either to amend or supplement the Amended Complaint or institute a separate action.

To the extent the Court views any suggested path forward as possibly precluded by the pending appeal (notwithstanding the Federal Defendants' abandonment of that appeal), the Court could issue an indicative ruling under Rule 62.1 of the Federal Rules of Civil Procedure Rule 62.1.  That rule permits a district court to address matters on appeal provided certain steps are followed to advise the circuit court and seek its approval. *See generally Defenders of Wildlife v. Salazar*, 776 F.Supp.2d 1178 (D. Mont. 2011).

4815-5921-1871.6

**F.     Conclusion**

Plaintiffs seek a prompt status conference to address Interior's unjustified and continuing delay in issuing the UFJ decision and bringing this lengthy and expensive administrative process to a close.  Plaintiffs believe the Court may be of assistance and help the parties finally to achieve the resolution of this matter that has eluded them to date.

Respectfully submitted,

PLAINTIFFS DAVID LITTLEFIELD et al.

*/s/ David H. Tennant*
David H. Tennant (*pro hac vice*)
dtennant@nixonpeabody.com
Nixon Peabody LLP
1300 Clinton Square
Rochester, NY 14604-1792
(585) 263-1000
Email: dtennant@nixonpeabody.com

*/s/ Matthew J. Frankel*
Matthew Frankel (BBO#664228)
mfrankel@nixonpeabody.com
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110-2131
(617) 345-1000

Dated: March 19, 2018

# FEDERAL DEFENDANTS' POSITION

## Federal Defendants' Opposition to Status Conference

The Federal Defendants' position is that a status conference is neither appropriate nor necessary. It is not appropriate because Plaintiffs are seeking modification of a judgment that is currently on appeal. Plaintiffs' reliance on Federal Rule of Civil Procedure 54(b) is to no avail because under that Rule, the Court retains jurisdiction over all claims that have not been certified for appellate review as a final judgment pursuant to Rule 54(b). However, the decision ordering a remand was certified and is currently before the First Circuit Court of Appeals. *See Johnson v. Orr*, 897 F.2d 128, 130 (3d Cir. 1990) ("Thus, certification of a judgment under Rule 54(b) triggers, subject to [appellate] review, all of the direct consequences of any final judgment."); *Republic of China v. Am. Exp. Co.*, 190 F.2d 334, 338-39 (2d Cir. 1951) (distinguishing judgments certified as final pursuant to Rule 54(b) from uncertified orders which are "subject to [the court's] recall at any time before the end of the entire litigation").

A status conference is also not necessary because the Department of the Interior has already indicated to Plaintiffs that it expects to have a final decision that will conclude the remand sometime in May or June. Plaintiffs' attempt to curtail agency deliberation by resort to this Court is inappropriate, given that the Department of the Interior is tasked with deciding a complicated question that will have significant implications for the Mashpee Wampanoag Tribe. This is especially so given that Federal Defendants understand Plaintiffs to already have all the relief they need: no activity is occurring on the trust parcel at issue in this litigation and the Mashpee Wampanoag Tribe has been unable to move forward with its planned gaming establishment. Trust acquisition decisions involve complex issues of fact and law that typically

4815-5921-1871.6

take years to decide.  The decision process here is nearing the end and Plaintiffs should not be

permitted to seek judicial interference with the remand process at this juncture.

Respectfully submitted,

DEFENDANTS UNITED STATES
DEPARTMENT OF THE INTERIOR et al.

*/s/ Steven Miskinis*
REBECCA M. ROSS, Trial Attorney
JOANN KINTZ, Trial Attorney
STEVEN MISKINIS, Trial Attorney
Indian Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044
TEL: (202) 616-3148
FAX: (202) 305-0275
Email: Steven.Miskinis@usdoj.gov

Dated: March 19, 2018

**INTERVENOR-DEFENDANT MASHPEE WAMPANOAG TRIBE'S POSITION**

**The Tribe's Opposition to Plaintiffs' Request for Status Conference**

This Court's Appeals Coordinator and Docket Clerk emailed counsel for Plaintiffs on February 26, 2018, explaining that because the above-captioned matter had been appealed to the U.S. Court of Appeals for the First Circuit "until the Court of Appeals returns a Mandate and/or Order on that pending appeal (16-2484), Judge Young has no jurisdiction on the case." (See Exhibit A, attached hereto.) As described below, that statement is correct. Nevertheless, Plaintiffs are seeking to have this Court take further action as to precisely the judgment on appeal before the First Circuit. There is no need for a status conference where the First Circuit retains exclusive jurisdiction over the only judgment in this matter, and all the claims over which this Court retains jurisdiction have been stayed. ECF No. 50, at 5 (deferring disposition of all claims aside from that currently on appeal). To the extent Plaintiffs may seek to rely upon Rule 62.1 for an indicative ruling, this Court has already ruled on precisely the relief that Plaintiffs would seek such that any Rule 62.1 motion would amount to nothing but a grossly untimely and improper motion for reconsideration.

I.  **Rule 54(b) Is Not a License For District Courts to Enter an Order on a Judgment Pending Before a Court of Appeals.**

Plaintiffs are wrong that Rule 54(b) allows U.S. district courts to exercise jurisdiction relative to judgments that have been appealed solely because they retain jurisdiction over other claims not on appeal. See Fed. R. Civ. P. 54(b). Rule 54(b) does not purport to grant district courts jurisdiction over judgments that have been appealed, but rather allows a district court to retain jurisdiction as to certain claims, as the Court has done here, while directing "entry of a final judgment as to one or more . . . claims":

> (b) Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b) (emphasis supplied). The "overall purpose of Rule 54(b) is to create an exception to the longstanding prudential policy against piecemeal appeals—and to permit district courts to determine that parties should, in certain circumstances, be exempted from the burden of awaiting the final outcome of a multi-party or multi-claim case." Willhauck v. Halpin, 953 F.2d 689, 701 (1st Cir. 1991).

Here, pursuant to Rule 54(b) the Court "direct[ed] entry of a final judgment as to one or more" claims out of a broader array of claims, and retained jurisdiction over those *other claims as to which judgment has not entered*. Fed. R. Civ. P. 54 (b). In particular, in resolving the parties' "cross-motions for summary judgment on the Plaintiffs' first cause of action . . . which involves the Mashpees' eligibility as beneficiaries under the IRA, and correspondingly, the authority of the Secretary to take land into trust for the Mashpees' benefit," ECF No. 87, at 2, the Court "determine[d] there is no just cause for delay, Fed. R. Civ. P. 54(b), and enter[ed] this declaratory judgment on the Plaintiffs' first cause of action. The matter is remanded to the Secretary for further proceedings consistent with this opinion." Id. at 22. Pursuant to the Stipulation and Order Limiting Scope of Rule 65(a)(2) Trial to Plaintiffs' First Cause of Action and Deferring Other Matters Pending Disposition of Same, all other claims in this action were stayed. ECF No. 50, at 5.

As this Court is well aware, its judgment on Plaintiffs' first cause of action, under which the Court ordered remand to the Department, is currently pending before the First Circuit. ECF No. 132 (Notice of Appeal as to: (1) the Court's order on summary judgment, ECF No. 87, (2) the judgment entered in connection with same, ECF No. 88, and (3) the Court's order clarifying its order on summary judgment, ECF No. 121). Thus, by asking this Court to enter any order relative to this Court's remand to the Department, Plaintiffs are seeking to have this Court act on precisely the judgment that is pending before the First Circuit. As much as Plaintiffs may wish it were otherwise, Rule 54(b) provides solely for the reverse situation, for a district court to act on claims that *are not pending before a court of appeals*.

## II.      Any Contemplated Motion for Indicative Ruling By Plaintiffs is Futile.

To the extent that Plaintiffs may seek an indicative ruling from this Court, pursuant to Federal Rule of Civil Procedure 62.1, that would vacate the September 18, 2015 Record of Decision, order the Tribe's land in East Taunton taken out of trust, and rescind the Department's reservation proclamation—as they have indicated to the Tribe they may do—this Court already ruled that the July 28, 2016 order on the parties' summary judgment motion, ECF No. 87, did not require the Tribe's land to be taken out of trust. See ECF No. 89. Indeed, in deciding the Government's Motion for Partial Reconsideration or Clarification, the Court made clear that pursuant to the Court's July 28, 2016 remand to the Department, the Department was entitled to analyze whether to maintain the Tribe's land in trust:

> Having remanded this matter to the Secretary, it is no violation of the Court's order should the agency wish to analyze the Mashpees' eligibility under the first definition of "Indian" provided in Section 479, or to reassess the Mashpees' eligibility under the second definition consistent with the Court's ruling on the proper interpretation of that definition.

21

ECF No. 121, at 3. In opposing the Government's Motion for Partial Reconsideration or Clarification, Plaintiffs made the same argument they seek to make now, that remand to Interior is inappropriate and the land must be ordered taken out of trust. ECF No. 110. Plaintiffs did not appeal from this Court's Order rejecting their argument that the Tribe's land should be taken out of trust.. In other words, Plaintiffs' contemplated motion amounts to an exceedingly untimely motion for reconsideration of the Court's order on the Government's Motion for Partial Reconsideration or Clarification. To state the obvious, there is no need to hold a status conference on an issue the Court has already decided.

If, on the basis of claimed delay by the Department, Plaintiffs seek to have this Court issue an indicative ruling on a motion requesting that the Court impose a deadline on the Department to act purusant to the Court's remand, they must recognize that such a process would only require more time. Under Rule 62.1, even if the Court indicated, in response to a hypothetical motion by Plaintiffs, that it would be inclined to impose a deadline upon the Department, it would need to await a remand from the First Circuit before entering any order. Fed. R. Civ. P. 62.1(c) ("The district court may decide the motion if the court of appeals remands for that purpose."). Thus, the process would require: (1) all parties to brief the issue; (2) this Court's deciding the motion, including potentially holding a hearing; (3) further briefing before the First Circuit as to whether a remand is appropriate; (4) awaiting a decision from the First Circuit; and (5) entry of an order by this Court. Such a process would require months to resolve, by which time the Department would almost certainly have concluded its remand process.

If Plaintiffs are nevertheless intent on filing a motion for indicative ruling, they can do so without a status conference. There is no utility to calling the parties in to discuss a hypothetical motion.

4815-5921-1871.6

Respectfully submitted,

MASHPEE WAMPANOAG INDIAN TRIBE,

By its attorneys,

*/s/ Benjamin J. Wish*
Howard M. Cooper, Esq. (BBO#543842)
hcooper@toddweld.com
Max D. Stern, Esq. (BBO#479560)
mstern@toddweld.com
Benjamin J. Wish, Esq. (BBO#672743)
bwish@toddweld.com
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626

Dated: March 19, 2018

4815-5921-1871.6

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew J. Frankel, hereby certify that this document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent via first class mail to those indicated as non-registered participants, if any, on March 19, 2018.

*/s/ Matthew J. Frankel*

4815-5921-1871.6